UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

| | |
|---|---|
| ALFRED A. TURNER JR., | **COMPLAINT** |
| Plaintiff, | |
| v. | Case No.: 14-cv-771 |
| LAWRENCE LUDTKA, doing business as LARRY'S ANTIQUES, | |
| Defendant. | |

———————————————————————

Plaintiff, Alfred A. Turner Jr., by and through his attorneys, Goldberg Segalla LLP, as and for his Complaint against Defendant, Lawrence Ludtka, alleges as follows:

1. This action is brought in response to Defendant's sale of two counterfeit TIFFANY brand lamps to Plaintiff, specifically a counterfeit TIFFANY Geranium Lamp and a counterfeit TIFFANY Spider Lamp (hereafter, the "Lamps").

## PARTIES

2. Plaintiff Alfred Turner is a resident of, and is domiciled in, Florida.

3. Defendant Lawrence Ludtka is a resident of, and is domiciled in, New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 and is between citizens of different states.

5. Plaintiff paid more than $75,000 for the counterfeit Lamps addressed in this Complaint. Plaintiff's damages exceed $75,000.

6.      Venue is proper in this Court under 28 U.S.C. § 1391. Defendant has transacted business in this District, events giving rise to the claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

7.      At all relevant times, Defendant did business as Larry's Antiques, which is located at 181 Elmwood Avenue, Buffalo, New York 14201.

8.      Defendant also stores items to be sold through Larry's Antiques at his home address located at 122 Mariner Street, Buffalo, New York 14201.

9.      Larry's Antiques is a consumer-oriented retail shop that sells antiques and other merchandise to consumers in the Buffalo-area.

10.      Larry's Antiques also communicates to consumers over the Internet and through a network of brokers to arrange sales of antiques and other merchandise.

11.      Defendant holds himself out to the public as being knowledgeable about antiquities, including TIFFANY brand products.

12.      Defendant held out to the public that the Lamps were genuine TIFFANY lamps.

13.      Defendant widely disseminated to the public through the Internet and through his network of brokers that the Lamps were genuine TIFFANY lamps.

14.      Turner first learned of the TIFFANY Lamps after being contacted over the Internet by a broker acting for Defendant.

15.      Following this initial contact, Turner reached out to discuss the purported TIFFANY Lamps with Defendant.

16.      Defendant represented to and repeatedly assured Turner that the Lamps were genuine TIFFANY lamps.

17. Defendant represented to Turner that Grant Paulsen, a well-regarded Western New York TIFFANY Dealer and collector and partner of Jeffrey Thayer, had examined the Lamps and determined them to be authentic.

18. Defendant made misrepresentations as to the authenticity of the Lamps to Turner repeatedly over the phone during multiple calls throughout September 2012.

19. On September 20, 2012, Turner met with Defendant in his shop on Elmwood Avenue to see the Lamps in person.

20. During the September 20, 2012 in person meeting, Defendant again represented that the Lamps were genuine TIFFANY Lamps.

21. The Lamps were stamped with TIFFANY trademarks.

22. In reliance on Defendant's representations, Turner paid Defendant $40,000 for the purported TIFFANY Geranium lamp on September 20, 2012.

23. In reliance on Defendant's representations, Turner paid $60,000 for the purported TIFFANY Spider Lamp on October 1, 2012.

24. Defendant provided a hand written receipt for Turner's purchase specifying that the Lamps were TIFFANY products.

25. Turner incurred approximately $1,000 in costs in meeting with Defendant and obtaining the Lamps.

26. After acquiring the Lamps from Defendant, Turner sent the purported TIFFANY Spider lamp to Sotheby's to be auctioned.

27. After evaluating the TIFFANY Spider lamp, Sotheby's refused to auction it and returned it to Turner because of concern that the lamp was counterfeit.

28. Following Sotheby's return of the purported TIFFANY Spider lamp, Turner sought a formal evaluation of both of the Lamps from Paul Crist of Paul Crist Studios, Inc.

29. Paul Crist is known as a foremost appraiser of TIFFANY products.

30. Paul Crist evaluated the Lamps and determined them to be counterfeit.

31. Upon conclusion of his review, Paul Crist prepared two "Letters of Authentication," both dated May 14, 2014.

32. The Letter of Authentication for the purported TIFFANY Geranium Lamp noted that while the genuine Lamp was sold by Tiffany Studios in 1906, the Lamp Defendant sold to Turner included types of glass not manufactured until the late 1980s and 1990s and included a recently applied finish. Paul Crist concluded that "this shade is not a legitimate product of Tiffany Studios. It is rather a modern reproduction of a Tiffany design, probably produced sometime after 1990."

33. The Letter of Authentication for the purported TIFFANY Spider Lamp noted that while the genuine Lamp was sold by Tiffany Studios in 1906, the Lamp Defendant sold to Turner included evidence of being manufactured with modern rotary tools and included modern silicon bronze castings, as opposed to the red brass castings that would be present in a genuine version of the Lamp. Paul Crist concluded that "this shade is a modern reproduction."

34. After being advised that the Lamps were counterfeits, Turner demanded that Defendant return his money.

35. Defendant has refused to return Turner's money.

36. Turner incurred approximately $4,000 in costs in obtaining the Lamps and having Sotheby's and Paul Crist evaluate the Lamps.

37. Paul Crist also later disclosed to Turner that prior to Defendant's sale of the Lamps to Turner, a client of Paul Crist had been offered the same purported TIFFANY Spider lamp, but refused to buy it due to concerns over the Spider lamp's authenticity.

38. Upon information and belief, despite being told by another prospective buyer that the Spider lamp's authenticity was doubtful, Defendant sold it to Turner as being a genuine TIFFANY lamp.

39. Upon information and belief, Defendant did not disclose that another buyer had questioned the authenticity of the Spider lamp and instead continued to offer it for sale to the public at his store.

40. Upon information and belief, Defendant has repeatedly offered for sale and sold TIFFANY products that are counterfeit.

41. Following Turner's purchase of the Lamps, he learned that in 2014 a prominent Western New York auctioneer had twice declined to offer for auction purported TIFFANY branded products purchased from the Defendant due to doubts as to the authenticity of the product.

42. Turner also learned that on at least one of those two occasions, Defendant similarly represented to the buyer that the purported TIFFANY product was examined by Grant Paulsen and confirmed to be authentic.

43. Upon information and belief, Defendant has repeatedly offered counterfeit TIFFANY merchandise for sale and induced buyers into purchasing the merchandise by assuring them that the products' authenticity had been confirmed by Mr. Paulsen.

## FIRST CAUSE OF ACTION
### (Fraud)

44. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

45. Defendant made material misrepresentations to, and concealed and suppressed material facts from, Turner, third parties, and a class of individual antique purchasers of which Plaintiff is a member.

46. Defendants' misrepresentations that the Lamps were genuine were made to Turner during multiple phone calls in September 2012 and during an in person meeting between Defendant and Plaintiff at Defendant's store, Larry's Antiques, located at 181 Elmwood Avenue, Buffalo, New York.

47. The omissions and misrepresentations of Defendant were material and were false and misleading.

48. Defendant knew the omissions and misrepresentations were material and were false and misleading at the time they were made.

49. Defendant misrepresented, concealed, and suppressed the facts with the intent to influence the actions of Turner, and the actions of the class of individuals of which Turner is a member, including to influence purchases of the TIFFANY Lamps.

50. Defendant intended that Turner rely on his expertise with antiques and the misrepresentations that the Lamps were genuine TIFFANY Lamps so that he could sell the counterfeits to Turner for substantial profit.

51. Defendant also misrepresented that the Lamps had been examined by Grant Paulsen for the purpose of inducing Turner in believing that the Lamps' authentication had been verified.

52. Defendant fraudulently concealed that the Spider lamp had previously been rejected by another buyer as being counterfeit.

53. At the time Turner acted, Turner was unaware of the concealed and suppressed facts and would have acted differently if Turner had known the true facts.

54. Given the unique position of Defendant, Turner reasonably and justifiably relied on Defendant's misrepresentations and omissions.

55. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

56. In addition, as a result of the willful and intentional misconduct of Defendant in making misrepresentations to the public, including Turner, that the Lamps were genuine, Turner is entitled to punitive damages in a sum to be determined at trial, but believed to be in excess of $600,000, plus attorneys' fees and costs incurred in bringing this action.

## SECOND CAUSE OF ACTION
### (Violation of General Business Law § 349)

57. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

58. General Business Law § 349 prohibits any business or person from engaging in deceptive business practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York state.

59. Defendant materially misrepresented to Turner and to the general public that he was in the business of selling genuine antiques, including but not limited to the Lamps at issue.

60. These material misrepresentations were made by Defendant to the general public and Turner: i) orally, ii) via the Internet, and iii) by the false TIFFANY marks appearing on the Lamps at issue, which were displayed for sale to the public at Defendant's store.

61. Defendant's misrepresentations and omissions were made with the intent to deceive the public at large and the individual consumers who entered the store, such as Turner.

62. Defendant has engaged in material deceptive or misleading consumer-related business practices that affected consumers, including purchasers and collectors of antiques, a group that includes Plaintiff, in violation of General Business Law § 349.

63. Defendants' deceptive or misleading business practices alleged herein are likely to mislead and have mislead, reasonable purchasers of antiques.

64. Defendant willfully and knowingly engaged in the conduct described above.

65. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

66. In addition, as a result of the willful and intentional misconduct of Defendant in making misrepresentations to the public, including Turner, that the Lamps were genuine, Turner is entitled to punitive damages in a sum to be determined at trial, but believed to be in excess of $600,000.

## THIRD CAUSE OF ACTION
### (Violation of General Business Law § 350)

67. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

68. General Business Law § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in New York state.

69. As stated herein, Defendant falsely marketed the Lamps as being genuine TIFFANY Lamps.

70. Defendant willingly and knowingly engaged in the conduct discussed above.

71. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

72. In addition, as a result of the willful and intentional misconduct of Defendant in making misrepresentations to the public, including Turner, that the Lamps were genuine, Turner is entitled to punitive damages in a sum to be determined at trial, but believed to be in excess of $600,000.

### FOURTH CAUSE OF ACTION
### (Breach of Contract)

73. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

74. Defendant contracted to sell Turner genuine TIFFANY Lamps.

75. Turner fully performed under the contract by paying Defendant.

76. The purported TIFFANY Lamps sold by Defendant are counterfeits.

77. Defendant concealed that the Lamps were counterfeit, and made and continued to make misrepresentations that the Lamps were genuine TIFFANY Lamps.

78. Turner did not discover that the Lamps were counterfeits prior to paying Defendant.

79. Turner notified Defendant that the Lamps were counterfeits soon after himself learning that the Lamps were counterfeits and demanded that his money be returned.

80. Defendant is in breach of his contract with Turner by selling counterfeit TIFFANY Lamps to Turner.

81. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

## FIFTH CAUSE OF ACTION
### (Breach of Warranty)

82. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

83. Defendant made an affirmation of fact that the Lamps were genuine TIFFANY Lamps.

84. Defendant's affirmation of fact became part of the basis of the bargain.

85. Defendant's affirmation of fact constitutes a warranty under the common law and under the New York Uniform Commercial Code § 2-313.

86. Turner justifiably relied upon Defendant's warranty as the basis for purchasing the purported TIFFANY Lamps for $100,000.

87. Defendant knowingly and falsely represented the nature of the Lamps he was selling to Plaintiff and Plaintiff relied on these representations and warranties in purchasing the Lamps.

88. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

## SIXTH CAUSE OF ACTION
### (Negligent Mispresentation)

89. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

90. Defendant represented to Turner that the Lamps were genuine TIFFANY Lamps that conformed to the written and oral descriptions provided to Turner.

91. In providing such false information and in making omissions, Defendant failed to exercise reasonable care or competence in obtaining or communicating the information to Turner.

92. Defendant knew or should have known that these representations were false.

93. Defendant knew that Turner was relying on his knowledge, skill and expertise in TIFFANY products and the authentication thereof.

94. Turner reasonably relied and acted upon Defendant's representations.

95. A special relationship of trust and confidence existed between Defendant and purchasers of antiques, including TIFFANY lamps, due to Defendant's specialized ability to ascertain and investigate the history and authenticity of the antiques he acquired and offered for sale.

96. This special relationship imposed upon Defendant a duty to provide truthful, complete, and non-misleading information about the antiques offered for sale, including the purported TIFFANY Lamps.

97. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

98. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

99. Defendant has been enriched by the receipt of funds from Turner for the counterfeit TIFFANY Lamps.

100. Defendant has failed to repay Turner for his purchase of the counterfeit TIFFANY Lamps.

101. Equity and good conscience demand that Defendant compensate Turner for his purchase of the counterfeit TIFFANY Lamps.

102. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

103. In addition, as a result of the willful and intentional misconduct of Defendant in making misrepresentations to the public, including Turner, that the Lamps were genuine, Turner is entitled to punitive damages in a sum to be determined at trial, but believed to be in excess of $600,000.

## EIGHTH CAUSE OF ACTION
### (Money Had and Received)

104. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

105. Turner paid Defendant $100,000 for the purported TIFFANY Lamps.

106. Instead of receiving TIFFANY Lamps, Turner received worthless counterfeits.

107. Defendant has received money from Turner that in equity and good conscience should be returned to Turner.

108. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

109. In addition, as a result of the willful and intentional misconduct of Defendant in making misrepresentations to the public, including Turner, that the Lamps were genuine, Turner is entitled to punitive damages in a sum to be determined at trial, but believed to be in excess of $600,000.

## NINTH CAUSE OF ACTION
### (Conversion)

110. Plaintiff repeats and realleges the preceding allegations with the same force and effect as if fully set forth herein.

111. Defendant's sale of the counterfeit TIFFANY Lamps to Plaintiff in exchange for $100,000 and failure to return the funds constitutes an exercise of rights to the funds contrary to the superior rights of Turner.

112. Defendant's acts constitute a conversion of Turner's property.

113. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $105,000, plus interest, costs, and expenses.

114. In addition, as a result of the willful and intentional misconduct of Defendant in making misrepresentations to the public, including Turner, that the Lamps were genuine, Turner is entitled to punitive damages in a sum to be determined at trial, but believed to be in excess of $600,000.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. On his First through Ninth causes of action in the sum of at least $105,000, plus 9% per annum statutory interest ($18,356.30 accrued as of September 10, 2014) for a total amount of $123,356.30, and further daily interest in the amount of $25.89 per day until judgment;

B. exemplary damages in an amount to be determined at trial, but believed to be in excess of $600,000;

C. attorney's fees;

D. the costs and disbursements of this action; and

  E.  for such other, further and different relief as to this Court seems just and proper.


DATED: Buffalo, New York
     September 12, 2014

              GOLDBERG SEGALLA LLP


                s/ Daniel B. Moar
              Daniel B. Moar
              *Attorneys for Plaintiff*
              665 Main Street, Suite 400
              Buffalo, New York  14203
              Telephone: (716) 566-5400
              dmoar@goldbergsegalla.com